FRED J SCHWAEMMLE CONSTRUCTION COMPANY v
DEPARTMENT OF COMMERCE, CORPORATION AND
SECURITIES BUREAU

Docket No. 51881. Submitted June 2, 1981, at Lansing.—Decided
September 8, 1981. Leave to appeal applied for.

Fred J. Schwaemmle Construction Company petitioned the Corpo-
ration and Securities Bureau of the Department of Commerce
for the release of certain funds being held in escrow in connec-
tion with the sale of limited partnership interests in Foote
Hills Associates so that payments owed Schwaemmle for con-
struction work could be paid by the partnership. Following a
hearing, the bureau ordered the release of the funds to the
partners-investors. Schwaemmle appealed in the Ingham Cir-
cuit Court, alleging that the funds properly should be released
to the partnership entity and thus be subject to claims of
partnership creditors. The Burton Abstract & Title Company,
the St. Paul Title Insurance Company, and Kelly Mortgage and
Investment Company were permitted to intervene as appel-
lants. Certain of the partners were permitted to intervene as
appellees on behalf of all the partners. Westinghouse Electric
Corporation, which also appeared before the bureau during the
hearings relative to disbursement of the escrow funds, as
another creditor of the partnership, brought a separate appeal
in the Ingham Circuit Court. The appeals were consolidated by
that court. Following a hearing, the order of the bureau was
reversed, and the funds were ordered to be paid to the appel-
lants in the circuit court, Ray C. Hotchkiss, J. The bureau and
the limited partners of Foote Hills Associates appeal. *Held:*

1. The circuit court erred in failing to apply the proper
standard of review for bureau decisions.

2. The bureau's decision to deny Schwaemmle's and Westing-

REFERENCES FOR POINTS IN HEADNOTES

[1-3] 2 Am Jur 2d, Administrative Law § 566.
[2] 69 Am Jur 2d, Securities Regulations—State § 94.
[3] 2 Am Jur 2d, Administrative Law § 747.
[4] 28 Am Jur 2d, Escrow §§ 2, 4, 5.
   69 Am Jur 2d, Securities Regulation—State § 29.
[5] 28 Am Jur 2d, Estoppel and Waiver §§ 157, 158.

house's petitions was supported by competent, material, and substantial evidence, and the circuit court erred in setting aside the bureau's order.

3. The bureau's decision is reinstated.

Reversed.

1. ADMINISTRATIVE LAW — ADMINISTRATIVE DECISIONS — JUDICIAL REVIEW — CONSTITUTIONAL LAW.

Decisions of administrative officers or agencies which are judicial or quasi-judicial and which affect private rights or licenses are subject to judicial review, including whether such decisions are authorized by law and, in cases where a hearing is required, whether a decision rendered following the hearing is supported by competent, material, and substantial evidence on the whole record (Const 1963, art 6, § 28).

2. SECURITIES REGULATION — ADMINISTRATIVE DECISIONS — JUDICIAL REVIEW — STATUTES.

A decision of the Corporation and Securities Bureau is not subject to *de novo* review; upon completion of the statutory filing procedures, the Ingham Circuit Court has exclusive jurisdiction to affirm, modify, enforce, or set aside a decision; however, the administrator's findings of fact, where supported by competent, material, and substantial evidence, are conclusive (MCL 451.811[a]; MSA 19.776[411][a]).

3. SECURITIES REGULATION — ADMINISTRATIVE DECISIONS — JUDICIAL REVIEW — APPEAL.

A judicial review of a decision of the Corporation and Securities Bureau may be appealed to the Court of Appeals on the ground that the reviewing court failed to apply the statutorily prescribed standard of review, and the Court of Appeals will review the decision of the bureau to determine whether it was supported by competent, material, and substantial evidence on the whole record and whether it was authorized by law.

4. SECURITIES REGULATION — SALE OF SECURITIES — ESCROW AGREEMENTS — STATUTES — ADMINISTRATIVE RULES.

The Corporation and Securities Bureau is authorized to impose conditions concerning escrow agreements involving the impounding of the proceeds of the sale of registered securities within the state beyond those relating to minimum amounts to be required for the release of the proceeds, including the requiring of a bureau approval prior to the alteration or amendment of any conditions of the agreement by the parties

(MCL 451.705[f][2], 451.810[g]; MSA 19.776[305][f][2], 19.776[410][g], 1979 AC R 451.705.3[1], [4]).

5. CONTRACTS — WAIVER.

A waiver of a condition in an agreement, to be effective, must be a voluntary, intentional relinquishment of a known right.

*Peter W. Steketee,* for Fred J. Schwaemmle Construction Company.

*Ward, Schenk & Boncher,* for Burton Abstract & Title Company and St. Paul Title Insurance Company.

*Donovan, Hammond, Carson, Ziegelman, Roach & Sotiroff* (by *Dennis M. Rauss),* for Kelly Mortgage and Investment Company.

*McGinty, Halverson, Brown & Jakubiak, P.C.* (by *Thomas M. Hitch),* for the representative partners.

Before: BEASLEY, P.J., and M. J. KELLY and N. A. BAGULEY,* JJ.

PER CURIAM. On January 25, 1978, respondent Michigan Department of Commerce, Corporation and Securities Bureau, ordered that funds held in escrow pursuant to an agreement be released to intervening respondents-appellants limited partners of Foote Hills Associates, a Michigan limited partnership. After the circuit court reversed the bureau's determination, respondent and intervening respondents-appellants appeal as of right.

On April 16, 1973, the Securities Bureau approved the request of Foote Hills Associates and Financial Services Corporation of America to make a limited partnership offering. The purpose

---

* Circuit judge, sitting on the Court of Appeals by assignment.

of the offering was to secure funds to enable the parties to complete construction of an apartment complex located in Kentwood, Michigan. As a condition of its approval, the Securities Bureau ordered that the proceeds of the issue be held by a depositary pursuant to the terms of an impoundment agreement between the issuer and depositary. The agreement, dated April 12, 1973, provided that the funds would be released from escrow upon the happening of the following events:

"(i) Upon compliance by the Underwriter with the condition in the order requiring this Escrow and upon request of the Underwriter the sum of $417,000.00 shall be released to the Underwriter;

"(ii) Upon request of the Underwriter and delivery to the Escrow Agent of the certificate of the Project Architect, Dimitrios Economedies, AIA, that the Project undertaken by the Issuer is 75% complete, the sum of $125,000 shall be released to the Underwriter.

"(iii) Upon request of the Underwriter made on the date of the initial closing of the permanent Loan, the Escrow Agent shall release the remaining $125,000 then in escrow together with all accrued interest, if any * * *."

The first two conditions were complied with, and the funds subject thereto were released. The final $125,000, with interest, that remains in escrow is the subject of this appeal.

Kelly Mortgage and Investment was the lender under the construction loan. As of June 1, 1974, Kelly had advanced $1,959,200.31 under the loan. At that time, the project was incomplete and the borrower was in default. The promoters desired to complete the project, and Kelly agreed to waive past defaults and to advance further sums on condition that a new general contractor was obtained.

Thereafter, the then-existing general contractor was replaced with petitioner, Fred J. Schwaemmle Construction Company. The orginal limited partnership agreement had provided that the final $125,000 remaining in escrow was to go to the original general contractor. Therefore, in order to accomplish the substitution of general contractors, a letter was sent to the limited partners requesting them to authorize an amendment of the limited partnership agreement. All of the limited partners agreed to the amendment.

The project subsequently failed, and the mortgage on the real property was foreclosed and the property sold. As a result, no permanent loan was ever obtained. In spite of the fact that the third condition in the escrow agreement was never complied with, Schwaemmle petitioned the Securities Bureau for release of the funds. It contended that the amendment of the limited partnership agreement constituted a waiver of the escrow condition. The bureau denied the request, stating that any attempt to obtain a waiver of the condition without prior bureau approval was ineffective. It further found that the amendment was vague and that disclosure to the investors was grossly inadequate. Based on these findings, the bureau ordered that the funds be returned to the original investors.

The petitioners appealed to the Ingham County Circuit Court which reversed the order of the bureau and awarded the funds to the petitioners.

As a preliminary matter, it is necessary to decide whether the circuit court used the proper standard to review the decision of the bureau. Section 28 of article 6 of the 1963 Michigan Constitution provides in relevant part:

"All final decisions, findings, rulings and orders of

any administrative officer or agency existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights or licenses, shall be subject to direct review by the courts as provided by law. This review shall include, as a minimum, the determination whether such final decisions, findings, rulings and orders are authorized by law; and, in cases in which a hearing is required, whether the same are supported by competent, material and substantial evidence on the whole record."

The standard of review for decisions of the Corporation and Securities Bureau is stated in MCL 451.811(a); MSA 19.776(411)(a):

"Any person aggrieved by a final order of the administrator may obtain a review of the order in the circuit court for the county of Ingham by filing in court, within 60 days after the entry of the order, a written petition praying that the order be modified or set aside in whole or in part. A copy of the petition shall be forthwith served upon the administrator, and thereupon the administrator shall certify and file in court a copy of the filing and evidence upon which the order was entered. When these have been filed, the court has exclusive jurisdiction to affirm, modify, enforce or set aside the order in whole or in part. The findings of the administrator as to the facts, if supported by competent, material and substantial evidence, are conclusive."

The circuit court in the present case did not apply the above standard in reviewing the bureau's decision. Rather, in effect, it conducted a *de novo* proceeding and found that the waivers were valid. Since the circuit court did not use the proper standard in reviewing the bureau's decision, this Court must review the decision to determine whether it was supported by competent, material, and substantial evidence on the whole record and whether it was authorized by law.

The bureau found that petitioners' failure to obtain prior bureau approval rendered the "waiver" provision ineffective regardless of whether or not the investors voluntarily waived their rights under the escrow agreement. Petitioners contend that the bureau was without authority to require prior bureau approval before waivers seeking the release of the final $125,000 from escrow could become effective.

MCL 451.705(f)(2); MSA 19.776(305)(f)(2) provides in relevant part:

"(f) The administrator may by rule or order require as a condition of registration by qualification or coordination:

* * *

"(2) That the proceeds from the sale of the registered security in this state be impounded until the issuer receives a specified amount from the sale of the security either in this state or elsewhere. The administrator may by rule or order determine the conditions of any escrow or impounding required hereunder, and, after prior notice and opportunity for hearing, may order the cancellation in whole or in part of any such security deposited in escrow where necessary for the protection of security holders. The administrator may not reject a depository solely because of location in another state."

It is apparent from the express language contained in the statute that the bureau is authorized to impose, either by rule or order, conditions concerning the escrow agreement beyond those relating to the minimum amount required for release. Pursuant to this statutory authority, the bureau promulgated the following rule:

"Rule 705.3. (1) As a condition to registration by qualification or coordination, the administrator may require that the proceeds from the sale of the registered

security in this state be impounded until the issuer receives a specified amount from the sale of the security in this state or elsewhere, sufficient to accomplish the purposes of the offering, or until certain stipulated requirements are met.

\* \* \*

"(4) A request for the release of impounded funds when requirements are met shall be by petition in writing affirming compliance with the registration and shall be accompanied by a statement from the depositary setting forth the total amount on deposit."[1]

The above rule authorizes the administrator to impose conditions on the release of escrow funds other than the requirement that the issuer receive a specified amount from the sale. It further states that the funds may not be released until a petition is filed demonstrating that the issuers complied with the registration. Concerning this particular offering, the bureau administrator issued an order which provided in pertinent part as follows:

"3. The issuer shall deposit or cause selling broker-dealer to deposit and leave with the depositary until further order of the bureau in a special impoundmend *[sic]* account 100 percent of the gross receipts accepted, being 100 percent of the offering price, derived from the offer of securities pursuant to this registration statement, subject to the rules of the bureau and the terms of an impoundment agreement satisfactory to the bureau between the issuer and the depositary, except that funds on deposit may be invested by the depositary in certificates of deposit or short term United States treasury obligations which securities and interest or gain or return thereon must then be deposited within four (4) full business days after payment and all payments not accepted shall be promptly returned with all copies of the subscription agreement.

"Deposits in the impoundment account are subject to

---

[1] 1979 AC R 451.705.3(1), (4).

further order of the bureau which as set forth below (a) may direct the release of funds to other than the conditional subscribers or (b) may direct the return of all or any of the funds to the conditional subscribers entitled thereto:

"(a) The bureau may by its order direct the depositary to release all or part of the deposits in the impoundment account to other than the conditional subscribers if petition is submitted to the bureau on or before *June 15, 1973* and if at the time of the submittal of the petition a showing is made to the bureau.

\* \* \*

"(3) There has been full compliance with the other conditions of this order and the law and regulations."

The order also stated:

"5. None of the securities shall be offered and sold except in accordance with the terms of this order and the registration statement without first securing amendment of the order or the written permission of the bureau. Before executing any agreements or before finalizing and putting into effect any proposed changes, requirements of the bureau shall be ascertained and compliance effected therewith."

It is apparent from the above that the bureau incorporated the conditions contained in the escrow agreement into its order. The condition contained in the escrow agreement relating the release of the final $125,000 was the following:

"(iii) Upon request of the Underwriter made on the date of the initial closing of the Permanent Loan, the Escrow Agent shall release the remaining $125,000 then in Escrow together with all accrued interest, if any \* \* \*."

It is conceded by the parties that closing never occurred on the permanent loan. Petitioners con-

tend that the amendment signed by the investors was effective to alter the conditions stated above. That contention ignores paragraph five of the bureau's order, which states that the terms of the order and of the registration statement may not be altered without prior bureau approval. No such prior approval was requested or received, nor was written consent of the bureau sought and obtained.

It also ignores MCL 451.810(g); MSA 19.776(410)(g), which provides in pertinent part:

> "(g) Any condition, stipulation, or provision binding any person acquiring any security or commodity contract to waive compliance with any provision of this act or any rule or order hereunder is void."

It is apparent from the above that the bureau was fully authorized to impose the above condition concerning release of the escrow funds. Without prior bureau approval, the parties could not alter that condition.

Even assuming that the investors could have waived the escrow condition without having received prior bureau approval, it does not appear that this amendment was effective to accomplish this result. In September, 1974, the investors were sent a letter in which they were asked to agree to an amendment of the limited partnership agreement. The provision of the limited partnership agreement which they were asked to amend related to the party who was entitled to received the $125,000 held in escrow once the escrow condition was complied with. In order for a waiver to be effective, it must be shown that the waiving party voluntarily and intentionally relinquished a known right.[2] Neither the letter nor the amend-

---

[2] *Bissell v L W Edison Co,* 9 Mich App 276; 156 NW2d 623 (1967).

ment contained any reference to the escrow agreement.

The three investors who testified at the hearing all claimed that it was their understanding that the only purpose of the amendment was to enable the substitution of Schwaemmle for the original contractor. There was no evidence introduced at the hearing which demonstrated that any investors had actual knowledge that this amendment was intended to alter the terms of the escrow agreement.

In view of the fact that the May, 1974, and the September, 1974, communications which were sent to the investors did not refer specifically to waiver of the escrow provisions, and in view of the fact that none of the investors were shown to have had actual knowledge of the proposed change of the escrow agreement, it appears that the bureau's decision to deny petitioners' request was supported by competent, material, and substantial evidence. Its decision to return the funds contained in the escrow account to the investors should not have been set aside.

The circuit court is reversed. The decision of the Corporation and Securities Bureau is reinstated.